(No. 77-CC-0663–

ROBERT SCHNEIDER, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed July 1, 1985.*

A. J. NESTOR, for Claimant.

NEIL F. HARTIGAN, Attorney General (WILLIAM E. WEBBER, Assistant Attorney General, of counsel), for Respondent.

PATCHETT, J.

This case was consolidated with the case of Lloyd Harris. Both cases were given the number 77-CC-0663 in the Court of Claims. Mr. Schneider and Mr. Harris were both injured in the same accident.

This Claimant was seriously injured on April 22, 1975, as a result of a fall from a scaffold from which he was working while painting a State-owned traffic bridge located at the U.S. Route 50 overpass of the L & N Railroad tracks, one-quarter mile west of the intersection of Illinois Route 111 and U.S. Route 50 in St. Clair County, Illinois. The Claimant was employed by the Gus T. Handge Company of St. Louis, Missouri, contractor on this project. The project was supervised by Mr. Larry Lipe, a resident engineer, employed by the State of Illinois. He inspected the work being performed on a daily basis. The occurrence in question took place at approximately 9:45 a.m. on April 22, 1975. The fall was a result of a release of a scaffold cable upon which the Claimant was working.

The scaffold consisted of boards which were placed across and upon cables strung from one end of the bridge to the other. The cables were strung underneath the bridge and fastened to a shoe or roller of the bridge by looping the cable around the shoe or roller. The rollers or shoes on this bridge were metal cylinders which rested upon a plate, and the bridge beam in turn rested upon the shoe or rollers. The rollers were designed to allow and absorb motion of the bridge. One of the rollers to which the cable was fastened came loose, allowing the scaffold upon which the Claimant was working to fall. The Claimant was working approximately 25 to 28 feet from the ground, and as a result of this fall suffered serious and disabling injuries.

The Claimant suffered a severe comminuted fracture of the right tibia and fibula and a fractured medial malleolus of the right ankle. He also suffered a fracture of the body of lumbar 3rd and incurred medical

expenses in the amount of $7,662.07. The orthopedic surgeon, Dr. Hurd, stated that in his opinion the Claimant will never be able to function as a painter, and that he is permanently disabled as a result of his injuries. The Claimant testified that he tried to work on a number of occasions after this injury. The first time was in December 1977, after being off work for more than two years. He was able to work for several weeks because of the nature of the job. He also worked as a maintenance painter, which did not require the effort as in construction work. He attended trade schools hoping to learn a new profession, but has been unsuccessful in finding permanent employment as of the date of the hearing in question. The Claimant's doctor testified that the Claimant is unable to work as a painter and that this disability is permanent. It was further noted that the Claimant, prior to this accident, was 35 years of age, able bodied, and had been a painter for 14 years. It was also noted in the record that the Claimant had his income diminished from $15,000.00 and $16,000.00 in 1974 and 1975, respectively, to $1,641.00 in 1976, $1,042.00 in 1977, $8,197.00 in 1978, $1,346.00 in 1980, and zero in 1981.

According to the testimony of the witnesses and the briefs of the parties, it appears that the State of Illinois is liable for the injuries sustained by this Claimant. In the case at hand, evidence was undisputed that the Respondent's resident engineer, Larry Lipe, had the right to stop the work in the event that humidity was too high, or if the work was being performed improperly. Mr. Lipe also had the responsibility to review the work on a daily basis, see that the contractor complied with the prevailing wage rate, see that minority groups were being used, that the contractor was complying with the

Fair Employment Practices Act, and use the scaffold to inspect the specifications and progress of the job. Therefore, the State of Illinois' resident engineer was clearly in charge of the work being performed on the structure, and therefore this case does come under the Structural Work Act. In the case of *Burton Hosey v. State* (1965), 25 Ill. Ct. Cl. 144, the Court held that the Structural Work Act was applicable to the State of Illinois.

Furthermore, the State's own witness, Edward Jankowski, civil engineer for the Department of Transportation, testified at the hearing that the roller assembly was on a flat plat. He further testified that the State inspects its bridges to determine if the rollers are in a position to pop out, and if they are in a critical position, they are repositioned. He testified that the bridge does have some elongation or rotation action to the structure, and no matter how heavy, has a tendency to lift. Therefore, if there is tension on a roller, it can pop out.

In this case, the scaffold had no railings, nets, trussing to prevent swaying, or other safety devices such as lifelines, to prevent workmen from falling if the scaffold gave away. From the testimony of witnesses, it was stated that the cables which suspended the scaffold were fastened to a roller or shoe which was designed to move and was not, therefore, a secure object. It was this roller or shoe which came loose, thereby allowing the scaffold to fall.

Mr. Christopher Fox, salesman for Marcal Rope & Rigging, testified on behalf of the Claimant and stated that in his opinion, the wire ropes that were used for suspending the scaffolding should have been fastened to something more secure. In addition, he testified that

safety belts or lifelines could have been used. He gave his opinion that the scaffold was not a safe place to work based on his knowledge of rigging and OSHA regulations.

It should also be noted that Mr. Lipe, resident engineer of the State of Illinois, testified that this job was bid without the type of scaffold being specified. He testified that if boom trucks, tubular scaffolding, or other more extensive scaffolding would have been erected, it would have increased the cost of the job.

Therefore, we award this Claimant the sum of $100,000.00 for his medical expenses, lost wages, and pain and suffering as a result of his injuries herein.